**UNITED STATES of America,** Plaintiff–Appellee,

v.

**Ulises Marino CURBELLO,** Defendant–Appellant.

No. 90–5296.

United States Court of Appeals, Eleventh Circuit.

Sept. 9, 1991.

---

into the United States between September 1 and 5, 1988, in violation of 21 U.S.C. § 952(a) and 963, and attempting to import cocaine into the United States on September 5, 1988, in violation of 21 U.S.C. § 963 and 18 U.S.C. § 2. Curbello stood trial alone in December 1989. At trial time Penalver was a fugitive, and Lopez and Fernando had been convicted in the Bahamas where they remained imprisoned.

Curbello had been arrested in the Bahamas on September 5, 1988, and prosecuted along with Lopez and Fernando, on a charge of conspiracy to possess and conspiracy to import cocaine into the Bahamas. The three were tried in late October. Curbello was acquitted and the other two convicted. On November 15 the United States obtained its indictment against Curbello and the same two co-conspirators, based on the same general set of facts at issue in the Bahamas trial. Curbello had returned to his home in the United States on November 4, he says, but he was not arrested until August 1989, nine months after the United States' indictment was returned.

The conviction must be reversed for admission, over objection, of testimony of co-conspirator Lopez, under F.R.Evid. 804(b)(3), without establishment of Lopez's unavailability as a witness.

G. Richard Strafer, Quinon & Strafer, P.A., Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., David E. Troyer, Harriett R. Galvin, Linda C. Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHNSON and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

The appellant Ulises Curbello was indicted on November 15, 1988 along with co-defendants Penalver, Lopez and Fernando on charges of conspiring to import cocaine

I.

Before trial Curbello moved to dismiss the indictment, alleging violation of the double jeopardy and due process clauses of the Fifth Amendment and of the extradition treaty between the United States and the Commonwealth of the Bahamas, and he sought a hearing on his motion. The motion had no merit and there was no showing sufficient to require a hearing. Curbello recognizes that under dual sovereignty doctrines two different sovereignties may bring successive prosecutions for the same offense, but he contends that a successive prosecution may be barred upon a showing that the earlier prosecution was merely a tool of the authorities bringing the second prosecution or a sham or cover for the second prosecution. Assuming this legal theory has application

between sovereigns, the motion presents no grounds for a hearing. If the United States had knowledge of the arrest in the Bahamas, and of the fact that there was evidence indicating the United States was the destination for the cocaine, no principle forbade the United States from awaiting the outcome of the Bahamas trial before submitting the matter to the grand jury in Florida. It was promptly submitted. If after indictment the United States had attempted to extradite Curbello he could have claimed the benefit of Article 4 of the extradition treaty between the United States and the Bahamas, which provides that extradition shall not take place if the person claimed has been tried and discharged. The United States did not seek extradition. Curbello was arrested in international waters in August 1989 when he was incidentally discovered aboard a vessel boarded by the Coast Guard. A records check revealed an outstanding warrant against him.

### II. The testimony of Lopez

As part of the proof under both counts it was necessary for the government to establish as alleged that the cocaine was intended for shipment to the United States. *U.S. v. Freeman*, 660 F.2d 1030, 1034 (5th Cir. Unit B, 1981), *cert. denied*, 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982); *Chua Han Mow v. U.S.*, 730 F.2d 1308 (9th Cir.), *cert. denied*, 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1984). The only testimony describing the United States as the destination was given by Bahamian police officers who described post-arrest statements made by Lopez in their interrogation of him. The officers testified over objection that Lopez told them he was hired in Miami to fly to the Dominican Republic and pick up a shipment of cocaine and fly it to the Bahamas. There he and his companion were to meet someone they knew who was to be sent there in advance to make arrangements for delivery of the cocaine and subsequent shipment of it to the United States. The prosecution sought unsuccessfully to elicit testimony from other witnesses identifying the United States as the destination.

When police arrived shortly after the plane landed Curbello was at the plane with Lopez, and there was testimony that he had a radio that would communicate with the radio in the plane. The jury, therefore, could infer that Curbello was the advance man who was to make arrangements for delivery and shipment to the United States.

This hearsay testimony of a post-arrest statement by a co-conspirator, made after the conspiracy was ended, was admitted by the court under F.R.Evid. 804(b)(3) as a declaration against interest by an unavailable declarant. The sole basis for a conclusion that Lopez was unavailable was a representation by the prosecutor that Lopez was in prison in the Bahamas. The court could accept counsel's representation, as obviously it did. *See Bailey v. Southern Pacific Transportation Co.*, 613 F.2d 1385, 1390 (5th Cir.1980). *See also U.S. v. Sindona*, 636 F.2d 792 (2nd Cir.1980). Rule 804(a) defines unavailability. Subsection (5) includes situations in which the declarant

> is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.

The government did not show that it had been unable to procure Lopez's attendance or testimony "by process or other reasonable means." Before this court it offers only a three-line footnote, with no citation of authority, saying that Lopez's unavailability as a witness was established by the fact that he was imprisoned in the Bahamas. This is not sufficient.

The government had notice more than two weeks before trial that the defense would object to the statements made by Lopez after his arrest. On November 27 Curbello filed a motion *in limine* to exclude the Lopez statements on the ground they were made two days after Lopez's arrest when the conspiracy was over. More than two weeks later the case came to trial. On December 12, after the jury was selected, the court took up pending

motions including the motion *in limine.* The government stated that it would offer the statement as a declaration against interest "as the declarant is not available." The court stated its understanding that the witness would not be present, and the prosecutor acknowledged this to be so because the witness was in prison in the Bahamas. In subsequent colloquy the prosecutor specified that he was relying on Rule 804(b)(3) the essence of which "is that the declarant is not available." The judge described the matter as a close one that he would have to take a look at but that he thought the defense "may have the better of that argument."

The following day, before trial proceedings began, the court asked whether the parties had further argument on the matter. The prosecutor acknowledged that he had read cases that the defense was offering on the issue of introduction of a statement against penal interest and acknowledged that the government must show the unavailability of the declarant. The court inquired again whether "they" [Lopez and Fernando] were in jail in the Bahamas, and defense counsel acknowledged his understanding that they were in jail in the Bahamas "but there has been no testimony as to what efforts have been made." The prosecutor responded: "I can put on the agent to testify to that, Your Honor." The government never offered such testimony. The court deferred ruling on the motion until the evidence was offered.

Subsequently the Lopez statements were offered through the testimony of the chief inspector of the Royal Bahamas police force. The defense renewed its objections, and the court responded: "You have made your record. I will overrule the objection."

Thus, the government did not represent that it had made any request of the Bahamian government to make Lopez available through extradition or any other means to attend the trial. Compare *U.S. v. Casamento,* 887 F.2d 1141, 1169 (2nd Cir.1989) (unavailability of witness established by government affidavit indicating that the Italian government had refused request to extradite the witness to the United States).

There has been nothing presented to exclude the possibility that both the Bahamian government and Lopez would have assented to his attendance (Bahamian authorities supplied three other witnesses for the trial).

The United States could have sought to take Lopez's deposition under Rule 15, F.R. Crim.P. *U.S. v. Johnpoll,* 739 F.2d 702, 708–10 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984); *U.S. v. Sines,* 761 F.2d 1434, 1438 (9th Cir.1985); *U.S. v. Salim,* 855 F.2d 944, 949 (2d Cir.1988). Or the government could have attempted to utilize letters rogatory obtained through the district court and forwarded through diplomatic channels. *See* 28 U.S.C. § 1781(a)(2) (authorizing the Department of State to transmit to foreign tribunals letters rogatory issued by U.S. courts).

Two months before Curbello's trial the United States Senate ratified a Treaty on Mutual Assistance in Criminal Matters that had been executed by officials of the United States and the Commonwealth of the Bahamas in June and August 1987. The treaty provides simplified means for taking testimony of witnesses and, under some circumstances, for transfer of persons in custody for testimonial purposes. In December 1988 the United States and the Bahamas had signed the United Nations Convention Against Illicit Traffic in Narcotic Drugs, ratified by the Senate in October 1989. It provides for mutual legal assistance between signatory nations, including "taking evidence or statements from persons."

In *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the State of Oklahoma made no effort to obtain for a criminal trial a witness who was in federal prison in Texas, and instead used, over objection, a transcript of the witness' testimony at his preliminary hearing. The Supreme Court reversed a denial of habeas corpus, referring to the underpinnings of the Confrontation Clause—the opportunity to cross-examine and the opportunity to weigh the demeanor of the witness. A few months earlier the Second Circuit had de-

cided *Government of Virgin Islands v. Aquino*, 378 F.2d 540 (1967) in which the prosecution in a rape case read to the jury the transcript of testimony which the complainant had given at the preliminary hearing, on the ground she was unavailable. The court reversed for failure to prove unavailability, on grounds of both Confrontation Clause and rules of evidence. It too referred to the objectives of cross-examination and an opportunity to observe demeanor. See also *U.S. v. Lynch*, 499 F.2d 1011 (D.C.Cir.1974) (failure to sufficiently prove unavailability of a witness personally served with a subpoena and told by the prosecutor to be in court).

The error of admitting Lopez's statements cannot be salvaged under harmless error principles. All other evidence of the United States as the destination was circumstantial and of arguable sufficiency; indeed, the government does not suggest that the circumstantial evidence of destination is sufficient but only that it corroborates the trustworthiness of Lopez's statements.

### III. The testimony of Penalver

The court admitted testimony by informants describing incriminating statements made to them by co-defendant Penalver concerning the landing and partial hijacking of the load in the Bahamas and the identify of pilot Lopez. The statements were properly admitted as declarations against interest under Rule 804(b)(3). Curbello concedes in his brief that Penalver was a fugitive at the time of trial and was unavailable.

### IV. Other points

There is no merit to Curbello's contentions that his right of confrontation was violated by limitations on cross-examination of Bahamian officers and that his attempted impeachment of witness Flowers was erroneously limited.

The judgment of conviction is RE-VERSED.